IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DALE G. CERNEY and ANGELA L. CERNEY, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 220160N |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY** |
| Defendant. | ) ) | **JUDGMENT** |

This matter came before the court on Defendant's Motion for Summary Judgment

(Motion), filed August 8, 2022. Plaintiffs filed a Response to Motion for Summary Judgment

(Response) on August 11, 2022. This matter is now ready for the court's determination.

I. STATEMENT OF FACTS

In 2015, Plaintiffs installed solar panels on their Portland, Oregon, home and received a

Residential Energy Tax Credit (RETC) totaling $6,000. (Compl at 3.)[1] Plaintiffs' RETC

application was approved via email on December 28, 2015. (*Id*. at 16.) The email stated it was

Plaintiffs' "official tax credit certification" and listed the "total tax credit" of $6,000. (*Id.*) The

email further listed a tax credit of $1,500 in each of the tax years 2015 through 2018. (*Id*.)

In 2016, Plaintiffs relocated to Washington, but kept their Oregon home as a rental

property. (Compl at 3.) Plaintiffs filed Oregon income tax returns for 2015 and 2016. (*Id*.) On

their 2015 return, Plaintiffs claimed $1,500 of RETC from their Schedule OR-ASC. (*Id*. at 116.)

Plaintiffs' 2016 Schedule OR-ASC-NP showed $4,500 RETC from the prior year, $1,500 RETC

awarded in 2016, and $1,500 RETC claimed in 2016. (*Id*. at 105; *see also id*. at 102.) Plaintiffs

---

[1] Defendant does not dispute the facts alleged in Plaintiffs' Complaint. (Journal Entry, Aug 8, 2022.)

did not initially file Oregon returns for tax years 2017, 2018, and 2019 because they had no Oregon taxable income—each year resulted in a net loss. (*Id.* at 3.) In 2020, Plaintiffs sold their Oregon property. (*Id.*) On their 2020 Schedule OR-ASC-NP, Plaintiffs showed that they had $4,500 of RETC remaining from the prior year and that they were awarded an additional $1,500 of RETC in 2020.[2] (*Id.* at 24.) On their 2020 tax return, Plaintiffs claimed $2,081 in RETC. (*Id.* at 19.)

Defendant issued a Notice of Deficiency to Plaintiffs for the 2020 tax year, adjusting Plaintiffs' RETC to $0. (Compl at 5.) Plaintiffs filed a written objection with Defendant challenging that adjustment. (*Id.* at 9.) In its Written Objection Determination letter, Defendant upheld its denial of the credit claimed in 2020 stating that Plaintiffs must file returns for tax years 2017, 2018, and 2019 to be able to claim any RETC. (*Id.* at 11.) Defendant reasoned that, without those returns, it would be unable to verify Plaintiffs' Oregon tax liability or if they had any RETC from those years to carry forward to 2020. (*Id.*) In accordance with Defendant's letter, Plaintiffs filed returns for the 2017, 2018, and 2019 tax years. (*Id.* at 3.) On their Schedules OR-ASC-NP for each of the three years, Plaintiffs did not report any amount of RETC awarded or used in tax years 2017, 2018, or 2019, but rather listed an "amount from prior year" of $3,000 for each of the three years. (*Id.* at 46, 66, 85.) Defendant adjusted Plaintiffs' 2017 return "to correct the amount of Oregon surplus credit" but "did not change Plaintiffs' Oregon percentage for the year." (Def's Mot at 1.) Defendant accepted Plaintiffs' 2018 and 2019 returns as filed. (*Id.*)

---

[2] In their Complaint, Plaintiffs appeared to contradict the information reported on their 2020 return, stating that they "carried forward the remaining $3,000 of [RETC]" on their 2020 return. (Compl at 3.) The court interprets Plaintiffs' statement to mean that they take the position, in this appeal, that they had $3,000 in RETC available in 2020.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
TC-MD 220160N                                                                                              2

Plaintiffs also appealed Defendant's Written Objection Determination to this court. The parties stipulated to the following facts: (1) Plaintiffs were full year Oregon residents in 2015 with a tax liability of $10,034; (2) Plaintiffs were part-year residents in 2016 with an Oregon percentage and tax liability of 47.9 percent and $5,189, respectively; (3) Plaintiffs were nonresidents in each of the tax years 2017 through 2019 with an Oregon percentage of zero and tax liability of zero in each year; (4) and Plaintiffs were nonresidents in 2020 with an Oregon percentage of 5.5 percent and a tax liability $698.[3] (Stip Facts at 1.)

## II. ANALYSIS

The issue presented is whether Plaintiffs may claim any RETC for the 2020 tax year under ORS 316.116 and ORS 316.117.[4]

The court shall grant a motion for summary judgment if all the documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." Tax Court Rule (TCR) 47 C.[5] "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party * * *."[6] *Id*.

---

[3] The parties stipulated that Plaintiffs' Schedule E income reported for tax year 2020 "needs to be adjusted to $9,956 of Oregon source Schedule E loss[,]" which will result in a reduction to Plaintiffs' Oregon tax liability from $2,081 to $698. (Stip Facts at 1.)

[4] The court's references to the Oregon Revised Statutes (ORS) are to the 2019 editions, unless otherwise indicated.

[5] TCR 47 is made applicable by Tax Court Rule – Magistrate Division (TCR-MD) 13 B which provides that "[t]he court may apply TCR 47 to motions for summary judgment, to the extent relevant."

[6] The party opposing summary judgment has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial. *See* TCR 47 C. On questions of fact, Plaintiffs bear the burden of proof by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

A.      *RETC, Generally*

ORS 316.116 allows a credit against taxes otherwise due "for costs paid or incurred for construction or installation of each of one or more alternative energy devices in or at a dwelling." ORS 316.116(1)(a).  Various statutory caps apply to the credit amount based on the cost, category, and type of alternative energy device installed.  *See* ORS 316.116(2).  For a "category two alternative energy device that is a solar electric system" the credit is limited to $6,000.  ORS 316.116(2)(d)(A).  In any one tax year, the total credit amount allowed is the lesser of the taxpayer's tax liability or $1,500.  ORS 316.116(3)(a), (7).  "Unused credit amounts may be carried forward as provided in subsection (8) * * * but may not be carried forward to a tax year that is more than five tax years following the first tax year for which any credit was allowed * * *."  ORS 316.116(3)(a).  Subsection (8) provides that:

> "Any tax credit otherwise allowable under this section that is not used by the taxpayer in a particular year may be carried forward and offset against the taxpayer's tax liability for the next succeeding tax year.  Any credit remaining unused in the next succeeding tax year may be carried forward and used in the second succeeding tax year, and likewise any credit not used in that second succeeding tax year may be carried forward and used in the third succeeding tax year, and any credit not used in that third succeeding tax year may be carried forward and used in the fourth succeeding tax year, and any credit not used in that fourth succeeding tax year may be carried forward and used in the fifth succeeding tax year, but may not be carried forward for any tax year thereafter."

Although ORS 316.116 allows a RETC to residents, it also contains provisions pertaining to nonresidents and part-year residents.  First, a nonresident taxpayer is "allowed [a RETC] in the proportion provided by ORS 316.117."  ORS 316.116(9).  Second, "[i]f a change in the status of a taxpayer from resident to nonresident or from nonresident to resident occurs, the credit allowed by this section shall be determined in a manner consistent with ORS 316.117."  ORS 316.116(11).  In turn, ORS 316.117(1) provides for the proration of certain deductions and credits of nonresidents and part-year residents by a ratio that equals "the federal adjusted gross

income of the taxpayer from Oregon sources divided by the taxpayer's federal adjusted gross income from all sources."

B.      *Parties' Positions*

Plaintiffs argue they "should be allowed to carryforward all of the unused credits" until the $6,000 credit amount is exhausted or until the five-year carryforward limit applies. (Ptfs' Resp to Def's Mot Summ J at 1.) Plaintiffs calculate that they had "$3,000 in usable credit for the tax year 2020." (Compl at 4.) In Defendant's view, Plaintiffs had no RETC remaining as of 2020, based on the following analysis: Plaintiffs received a $1,500 RETC in 2017, which was required to be multiplied by their Oregon percentage of 0, resulting in no credit allowed that year or carried forward. (Def's Mot at 3-4.) Plaintiffs received another $1,500 RETC in 2018, which was required to be multiplied by their Oregon percentage of 0, resulting in no credit allowed that year or carried forward. (*Id.*) In both 2019 and 2020, Plaintiffs received no new RETC credits and had no carryforward credits to use. (*See id.*)

In support of its position, Defendant relies on the nonresident proration requirement under ORS 316.116(9) and ORS 316.117, as well as the 2020 Instructions for Schedule OR-ASC-NP. (Def's Mot at 3.) The instructions give a five-step process for calculating carryforward credits and Defendant states that step 3 "instructs nonresidents to prorate the carryforward credits received in the year by their Oregon percentage to determine the amount awarded in 2020." (*Id.*) Step 3 of the instructions pertain to the "amount awarded this year" column of the form. Thus, the key question is whether Plaintiffs received or were awarded a RETC of $6,000 in 2015, subject to a $1,500 limit in each tax year, that they were permitted to carry forward for up to five years, or rather whether Plaintiffs received or were awarded a RETC of $1,500 in each of the years 2015 through 2018. This appears to be a question of first impression.

C.     *Whether the RETC was Awarded in One Year or Over Four Years*

Defendant's position assumes that, under ORS 316.116, Plaintiffs' $6,000 RETC was awarded in four annual increments of $1,500, rather than as a lump sum of $6,000 in 2015. (*See* Def's Mot at 4 (stating that Plaintiffs were required to receive $1,500 each in 2017 and 2018, prorated by their Oregon percentage of 0).) The 2020 Instructions to Schedule OR-ASC-NP, relied upon by Defendant, acknowledge that, "[f]or some credits, the full amount is awarded all at once * * * but for others, only a portion is awarded each year for a number of years * * *."[7] The Instructions take the position that the RETC is awarded over several years and a separate five-year carryforward clock begins with each $1,500 increment. *See* Example 6 (explaining that a $4,000 RETC that taxpayer's qualified for in 2017 translates to a $1,500 credit awarded in 2017 that expires in 2022, a $1,500 credit awarded in 2018 that expires in 2023, and a $1,000 credit awarded in 2019 that expires in 2024).[8] Defendant's position here is consistent with its 2020 Instructions. However, the court is bound by the statute, not Defendant's forms. The statutory basis for Defendant's position is ORS 316.116(3)(a), limiting the RETC to the lesser of $1,500 or the taxpayer's tax liability in any one tax year.

When interpreting a statute, the court's "paramount goal" is to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (citations omitted). To determine the legislature's intent, the court follows the framework described in *PGE* and *Gaines*, examining

---

[7] Defendant did not provide a copy of the instructions referenced to the court however, a copy is available online here: https://www.oregon.gov/dor/forms/FormsPubs/sch_or-asc_or-asc-np-inst_101-063-1_2020.pdf (accessed Nov 3, 2022).

[8] Although Example 6 describes the RETC as "awarded" in each of three tax years, Example 5 describes a taxpayer who was "awarded a $6,000" RETC in 2017, but could only "use[]" $1,500 per year in accordance with the statute. Example 5 then states the taxpayer was "awarded" $1,500 for tax years 2017, 2018, 2019, and 2020.

the text, context, and any relevant legislative history, and applying general maxims of statutory construction if need be. *See PGE*, 317 Or at 610-611; *Gaines*, 346 Or at 171-72; ORS 174.020. The court must not "insert what has been omitted, or * * * omit what has been inserted" and must "give effect to each provision in each relevant statute." ORS 174.010; *D.R. Johnson Lumber Co. v. Dept. of Rev.*, 318 Or 330, 335, 866 P2d 1227 (1994). The court bears in mind that "credits, deductions, [and] exemptions" are "a matter of legislative grace and not * * * a matter of taxpayer right." *Keller v. Dept. of Rev.*, 12 OTR 381, 384-85 (1993).

        1.      *Text and context of ORS 316.116*

The term at issue is "allowed" as used in ORS 316.116(3)(a), which states that, "Notwithstanding subsection (2)(a), (c) or (d) of this section, the total amount of the credits *allowed* in any one tax year may not exceed the tax liability of the taxpayer or $1,500 for each alternative energy device, whichever is less." (Emphasis added.) Defendant appears to take the position that "allowed" in subsection (3)(a) means "awarded" as used in Defendant's form and instructions, or "received" as used in Defendant's Motion.[9] The statute does not use the terms "awarded" or "received." The court begins by determining the meaning of "allowed" in subsection (3)(a), keeping in mind the ultimate question of whether Plaintiffs received a single $6,000 RETC in 2015 or rather received four $1,500 RETCs over four years.

ORS 316.116 does not define the term allowed. Section (3)(a) was added to ORS 316.116 in 2005 by Senate Bill (SB) 31 as part of revisions extending the RETC to include solar

---

[9] Defendant's Motion uses the term "received" instead of "awarded" but cites to the form instructions that use the term "awarded." (*See* Def's Mot at 3-4 ("The third step in the process instructs nonresidents to prorate the carryforward credits *received* in the year"; "Implementing ORS 316.116(9) to ORS 316.116(3) would result in nonresidents prorating the credit *received* for the first time between Oregon and non-Oregon source income"; and "Plaintiffs were required by the statute to *receive* $1,500 of residential energy credit in 2017 and 2018, prorate the *received* credit by the respective Oregon percentage, and exclude the credit prorated to non-Oregon source income from the credit carried forward to other years" (emphasis added).)

electric systems. *See* Or Laws 2005, ch 832, § 5. A contemporaneous dictionary gave the following relevant definitions of "allow": "to give or recognize as a right" and "to give or assign as a share or suitable amount (as of time or money) to a particular person or for a particular purpose[.]" *Webster's Third New Int'l Dictionary* 58 (ed 2002). Those definitions, while helpful, do not conclusively resolve the meaning of "allowed" in section (3)(a).

In general, "use of the same term throughout a statute indicates that the term has the same meaning throughout the statute." *McLaughlin v. Wilson*, 365 Or 535, 541, 449 P3d 492 (2019) (quoting *PGE*, 317 Or at 611). However, "nothing * * * precludes the legislature from defining the same terms to mean different things in the same or related statutes * * *" and statutory context may overcome the general rule. *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011). It appears that ORS 316.116 uses the term "allowed" throughout, often to serve different functions. The first is to describe the eligibility requirements for the RETC and the amount awarded. *See e.g.* ORS 316.116(1)(c) ("[a] resident individual shall be *allowed* a [RETC] * * * for costs paid or incurred for construction or installation of a solar electric system in a dwelling"); ORS 316.116(2)(d)(A) ("the credit *allowed* under this section may not exceed the lesser of $3 per watt of installed output or $6,000"); ORS 316.116(5)(b) ("[t]he taxpayer who is *allowed* the credit must be the owner or contract purchaser of the dwelling or dwellings served by the alternative energy device") (emphasis added).

The second function is to describe the process for claiming the resulting credit on the tax return. *See e.g.* ORS 316.116(7) ("[t]he total credits *allowed* under this section in any one year may not exceed the tax liability of the taxpayer"); ORS 316.116(8) ("[a]ny tax credit otherwise *allowable* under this section that is not used by the taxpayer in a particular year may be carried forward"). The court tentatively concludes that the use of the term "allowed" in ORS

316.116(3)(a) is performing the second function—describing how the credit may be claimed on the return. That function is indicated by the phrase "in any one tax year," which is similar to language in subsection (7), limiting the credit "in any one year" to the taxpayer's tax liability, and in subsection (8), referring to "a particular year."

The court also finds it helpful to consider how the term "allowed" was used in the statute in 2005 when section (3)(a) was added. When the RETC was extended to include solar electric systems in 2005, the following provisions defined the available credit in terms of the device: "the credit allowed under this section shall equal $3 per watt of installed output, but the installed output that is used to determine the amount of credit under this paragraph may not exceed 2,000 watts" and, notwithstanding that formula, "the total amount of the credit allowed under this paragraph may not exceed 50 percent of the total installed cost of the solar electric system." Or Laws 2005, ch 832, §5. Use of the term "allow" in those provisions served the first function: defining the amount awarded. The new provision limiting the credit to the lesser of $1,500 or the taxpayer's tax liability served the second function, describing how credit is claimed or used in a specific tax year. *Id*.

The structure of the carryforward provisions of ORS 316.116 supports the conclusion that the RETC is granted in a lump sum in the first tax year, and the $1,500 limitation contained in section (3)(a) defines the amount of credit that may be used in a specific tax year, not the total amount of the credit. ORS 316.116 contained carryforward provisions prior to 2005. SB 31 (2005) added new language concerning the carryforward. *See* ORS 316.116(7) (2003); Or Laws 2005, ch 832, § 5. Prior to 2005, ORS 316.116(7) (2003) allowed a taxpayer to carry forward any otherwise allowable tax credit that was not used by the taxpayer in a particular year. It contained similar language to ORS 316.116(8) (2019), describing the carryforward by year and

concluding that "any credit not used in that fourth succeeding tax year may be carried forward and used in the fifth succeeding tax year, but may not be carried forward for any tax year thereafter." ORS 316.116(7) (2003).

In the same subsection adding the $1,500 credit limit in any one tax year, SB 31 (2005) added the following additional carryforward language cross-referencing the existing statutory language:

> "*Unused credit* amounts may be carried forward as provided in subsection (7) of this section, but may not be carried forward to a tax year that is more than five years following the first tax year for which any credit was allowed with respect to the solar electric system that is *the basis for the credit*."

Or Laws 2005, ch 832, §5 (emphasis added). The term "unused credit" describes what may be carried forward after the "the credit allowed in any one tax year." The reference to the credit "allowed with respect to the solar electric system that is the basis for the credit" suggests that the $1,500 annual limit does not define the credit as such, but rather limits the amount of credit that may be used in a year.

The carryforward provisions contained in ORS 316.116 (2019) subsections (3)(a) and (8) each individually support a reading that the five-year carryforward period is tied to the first tax year in which any RETC was allowed. That is, both subsections indicate that the legislature intended that one five-year carryforward clock be applied to the overall credit awarded, rather than a separate five-year clock for each annual allotment of the same RETC. That indicates that the legislature viewed the RETC as one lump sum, with a $1,500 annual limit.

2. *Conclusion on meaning of "allowed" in ORS 316.116(3)(a)*

Neither party offered any legislative history for the court's consideration, so the court reaches its conclusion based upon the text and context of ORS 316.116 discussed above. The court concludes that Plaintiffs were awarded a $6,000 RETC in tax year 2015. They were

Oregon residents that year, so they received the full amount of the RETC.[10]  Plaintiffs were not awarded any additional RETC in 2016, 2017, or 2018, so the court rejects Defendant's calculations based upon its view that Plaintiffs received a $1,500 RETC in each of those years. Accordingly, Defendant's Motion is denied and Plaintiffs are allowed a RETC of $698 in tax year 2020.

### III.  CONCLUSION

Upon careful consideration, the court concludes that Plaintiffs are entitled to an RETC of $698 for the 2020 tax year.  Now, therefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment is denied.  Plaintiffs' are allowed a 2020 RETC of $698 for the 2020 tax year.

Dated this _____ of November 2022.


                                                    _____
                                                    ALLISON R. BOOMER
                                                    PRESIDING MAGISTRATE

***This is a <u>dispositive order</u> pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved.  See TCR-MD 19.***

***This document was signed by Presiding Magistrate Allison R. Boomer and entered on November 18, 2022.***

---

[10] This conclusion is consistent with the court's treatment of net operating losses (NOLs), in which the court looks to the taxpayer's resident status in the year of generation, not application. *See Zemke v. Dept. of Rev.*, 17 OTR 18, 24 (2003) (discussing *Lufkin v. Dept. of Rev.*, 11 OTR 410 (1990)).  In *Lufkin*, taxpayer generated Oregon-source NOLs while he was a nonresident and sought to deduct those NOLs as carryforwards in a subsequent year when he was a resident.  The court allowed the deduction, explaining that "[t]he purpose of the carryforward and carryback aspect of the [NOL] deduction is to overcome the rigidity inherent in the concept of an annual tax." *Id.* 11 OTR at 414 (quoting *Christian v. Dept. of Rev.*, 269 Or 469, 471, 526 P2d 538 (1974)).  In *Zemke*, the taxpayer generated NOLs while he was a nonresident that were not attributable to Oregon sources and sought to deduct a NOL carryforward in a subsequent year when he was an Oregon resident.  17 OTR at 20.  The court disallowed the deduction. *Id*. at 29.